IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND


ERIC A. CHAMBERS,              *
         Petitioner,
      v.                   *    CIVIL ACTION NO. RDB-07-1378

UNITED STATES OF AMERICA, et al.,   *
         Respondents.
                  ***

## MEMORANDUM OPINION

Petitioner, an inmate confined at the Federal Correctional Institution in Cumberland, Maryland, filed the above referenced case pursuant to 28 U.S.C. § 2241. Petitioner challenges three distinct actions of the Federal Bureau of Prisons ("BOP"). Paper No. 1. Petitioner first contends that under 18 U.S.C. § 3624(b) he is entitled to earn 54 days of good time credits per year of the sentence imposed. Under the BOP's method of computation, Petitioner alleges he receives fewer good time credits than Congress intended.[1]  *Id.*  Petitioner next alleges that the BOP's refusal to consider him for more than 180 days of community confinement violates his due process rights and violates the  Administrative Procedures Act ("APA"). Lastly, Petitioner argues that he is eligible for a sentence reduction under 18 U.S.C. § 3621(e).

### Background

Petitioner is a federal inmate serving a ninety-six month sentence with a projected release date of May 28, 2009. Paper No.6, Ex. 1. On July 18, 2005, Petitioner filed an administrative remedy requesting correction of his good conduct time calculation. The request for remedy was

_____

[1]The Bureau of Prisons (BOP), however, awards good time credits based on the amount of time actually served by each inmate, rather than on the basis of the total term of imprisonment imposed.

denied on July 25, 2005. His appeal to the Northeast Regional Office was denied on September 6, 2005 and his final agency appeal was denied on November 22, 2005. *Id.*

Petitioner filed an administrative remedy on April 24, 2006, seeking CCC referral for the remainder his sentence. The request was denied on May 3, 2006. and Petitioner did not appeal this remedy to the Regional or Central Office.[2] *Id.*, Ex. 3.

On December 14, 2006, Petitioner filed an administrative remedy regarding the substance abuse program. The remedy request was denied on December 18, 2006, and Petitioner did not appeal that decision.  On December 18, 2006, Petitioner was advised in writing that his current offense rendered him ineligible for early release under the Residential Drug Abuse Program.[3]  *Id.*, Ex. 2. He was also advised that he did meet the criteria for participation in the Residential Drug Abuse Treatment Program and began the RDAP program on August 13, 2007.  If he successfully completes the program he is expected to graduate with his class in May, 2008.

## Analysis

A.      Exhaustion

Respondents contend that Petitioner's claims regarding review of his eligibility for community confinement and early release should be dismissed due to Petitioner's failure to exhaust available administrative remedies.  Federal inmates are required to exhaust their administrative remedies prior to filing a §2241 petition.  *See Skinner v. Wiley,* 355 F.3d 1293 (11th Cir. 2004);

---

[2]Petitioner is not due to have his case file reviewed for eligibility for community confinement until April, 2008, 13 months prior to his projected release date. *Id.*, Ex. 3.

[3]He was advised that his current offense was listed in Section 7(e) of Program Statement 5162.04, Categorization of Offenses as one that precluded him from early release eligibility.

*Carmona v. Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001*); Martinez v. Roberts*, 804 F.2d 570 (9th Cir. 1996); *Moscato v. Federal Bureau of Prisons*, 98 F. 3d 757 (3rd Cir. 1996); *Little v. Hopkins*, 638 F.2d 953, 953-54 (6th Cir. 1991).   Thus, Petitioner's claims must be dismissed unless he can show that he has satisfied the administrative exhaustion requirement or that Respondents have forfeited the right to raise non-exhaustion as a defense.

The BOP has instituted a three tier administrative remedy process.  Initially a prisoner must attempt to informally resolve his complaint with staff.   If attempts at informal resolution are unsuccessful he may file a written complaint to the warden on a prescribed form.  This must be done within twenty days of the incident giving rise to the complaint unless the prisoner can demonstrate a valid reason for delay.  *See* 28 C.F.R. §542.14(a). If the prisoner is not satisfied with the warden's response he may appeal to the Regional Director.  This must be done within twenty days from the date of the warden's decision.  *See* 28 C.F.R. §542.15(a). Finally, if the prisoner is not satisfied with the response of the Regional Director he may appeal to the Office of General Counsel.  This must be done within thirty days from the date of the Regional Director's response.  *See id.*  Administrative remedies are not deemed to have been exhausted until an inmate has filed his complaint at all levels. *See* 28 C.F.R. §542.15(a).

The uncontroverted evidence shows that Petitioner filed Administrative Remedy No. 410970-F1 seeking referral to CCC for the remainder of his sentence on April 24, 2006. Paper No. 16, Ex. 1, Attachment B.  He did not appeal the denial of the request. Id.  The records further demonstrate that Petitioner filed Administrative Remedy No. 436612-F1 regarding the substance abuse program on December 14, 2006, which was subsequently denied.  Again, Petitioner failed to appeal the decision. *Id.*  Where the available administrative remedies are either unavailable or

wholly inappropriate to the relief sought, or where attempts to exhaust administrative remedies would be considered futile, the exhaustion requirement is deemed excepted.  *See Booth v. Churner,* 532 U.S. 731, 735 (2001); *Hessbrook v. Lennon*, 777 F.2d 999, 1003 (5th Cir.1985).  Such is not the case here.  Petitioner had ample time to pursue administrative remedies relative to his claims in an effort to have the Warden, Regional Director, and/or Central Office reconsider and correct the alleged errors.  This he did not do.  Accordingly, Petitioner's claim that he should be referred to CCC for the remainder of his sentence and his claim regarding the substance abuse program must be dismissed.

B.      Good Time Credits

Petitioner contends that under 18 U.S.C. § 3624(b) he is entitled to earn 54 days of good time credits per year of the sentence imposed.  The Bureau of Prisons (BOP) awards good time credits based on the amount of time actually served by each inmate, rather than on the basis of the total term of imprisonment imposed.  Under the BOP's method of computation, Petitioner alleges that he receives fewer good time credits than Congress intended.  *Id.*

The "good time credit" statute, 18 U.S.C. § 3624(b) provides, in pertinent part,  as follows:

(b) Credit toward service of sentence for satisfactory behavior.

(1) Subject to paragraph (2), a prisoner who is serving a *term of imprisonment* of more than 1 year other than a *term of imprisonment* for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's *term of imprisonment*, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations.  Subject to paragraph (2), if the Bureau determines that, during that year, the prisoner has not satisfactorily complied with such institutional regulations, the prisoner shall receive no such credit toward service of the prisoner's sentence or shall receive such lesser credit as the Bureau determines to be appropriate.  In awarding credit under this section, the Bureau shall consider whether the prisoner, during the relevant period,

has earned, or is making satisfactory progress toward earning, a high school diploma or an equivalent degree. Credit that has not been earned may not later be granted. Subject to paragraph (2), credit for the last year or portion of a year of the *term of imprisonment* shall be prorated and credited within the last six weeks of the sentence.

(2) Notwithstanding any other law, credit awarded under this subsection after the date of enactment of the Prison Litigation Reform Act shall vest on the date the prisoner is released from custody.

(Emphasis added).

The BOP has promulgated a rule and program statement reflecting its interpretation of the statute: "[pursuant to 18 U.S.C. §§ 3624(b) ... an inmate earns 54 days credit toward service of sentence (good conduct time credit) *for each year served.*" 28 C.F.R. §§ 523.20 (emphasis added). In *Yi v. Brooks*, 412 F.3d 526, 534 (4th Cir. 2005), the Fourth Circuit joined all other appellate courts that have ruled on this issue in upholding the method used by the BOP to award good time credits. *See also White v. Scribana* 390 F.3d 997, 1002-03 (7th Cir. Dec. 2, 2004); *Pacheco-Camacho v. Hood*, 272 F. 3d 1266, 1268-69 (9th Cir. 2001); *Brown v. Heminginway*, 53 Fed. Appx. 338, 339, 2002 WL 3185147 (6th Cir. 2002) (unpublished decision); *Williams v. Lammana*, 20 Fed Appx. 360, 361, 2001 WL 11306069 (6th Cir. 2001) (unpublished decision). The *Yi* Court found § 3624(b) to be ambiguous and deferred to the BOP's interpretation of the statute pursuant to *Chevron U.S.A., Inc. v. Natural Res. Def. Counsil, Inc*. 467 U.S. 837, 842 (1984). In light of the foregoing, Petitioner is not entitled to the computation of good time credits he seeks.

C.      Residential Drug Abuse Program

**Administrative Procedure Act**

The Administrative Procedure Act ("APA") requires administrative agencies to provide a period of public notice and comment before issuing a legislative or substantive rule. *See* 5 U.S.C. §§ 551, 553, and 554; *Lincoln v. Virgil*, 508 U.S. 182, 196 (1993) (APA notice and comment

requirements apply to legislative and substantive rules).  The notice and comment provisions of the APA do not apply to "interpretative rules, general statements of policy, or rules of agency organization, procedure or practice."  5 U.S.C. § 553(b)(3).

Under 18 U.S.C. § 3621(b), the BOP was delegated authority to administer its drug abuse treatment programs.  *See United States v. Jackson* 70 F.3d 874, 877-78 (6th Cir. 1995).  Further, 18 U.S.C. § 3621(e)(2)(B) provides "The period of a prisoner convicted of a  nonviolent offense remains in custody after successfully completing a treatment program *may* be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve."  (Emphasis added).  Congress did not define nonviolent offense nor did it specify which inmates convicted of nonviolent offenses would be entitled to early release.  In this absence of direction, the BOP promulgated and later revised 28 C.F.R. § 550.58 establishing initial early release criteria.  The United States Supreme Court upheld 28 C.F.R. § 550.58 as a permissible exercise of the discretion by the Director of the BOP under 18 U.S.C. § 3621(e)(2)(B).  *See Lopez v. Davis*, 531 U.S. 230, 231 (2001).

In light of *Lopez*, the Court finds no constitutional or statutory violation committed by the BOP in its promulgation of 28 C.F.R. § 550.58.  Plainly under existing caselaw the regulation permits the exercise of discretion within the BOP and constitutes an acceptable interpretation of 18 U.S.C. § 3621(e)(2)(B).

**Discretion of BOP**

A reduction in an inmate's term of imprisonment is within the discretion of the BOP. *See Lopez,* 521 at 241 ("[w]hen an eligible prisoner successfully completes the drug treatment, the Bureau thus has the authority, but not the duty, both to alter the prisoner's conditions of confinement

and to reduce his term of imprisonment."); *Wottlin v . Fleming*, 36 F.3d 1032, 1035 (5th Cir. 1998)

("Section 3621(e)(2)(B) explicitly leaves sentence reductions to the discretion of the BOP."); *Tasby*

*v. Pratt*, 2002 WL 1160071 (N.D. Tx. 2002) ("decision to exclude [prisoners that had a firearms

sentence vacated by *Bailey*] from consideration for early release is a valid exercise of the Bureau's

discretion."). An inmate's eligibility for participation in the RDAP Program, the determination of

whether an inmate has successfully completed the program, and the amount, if any, of reduction of

sentence earned by successful completion of the program, are all matters left to the discretion of the

BOP.

The Court finds no constitutional or statutory violation committed by the BOP in its

promulgation of 28 C.F.R. § 550.58 or Program Statement 5330.10, or in their application to

Petitioner. Under existing case law the regulation represents a permissible exercise of the BOP's

discretion and an acceptable interpretation of 18 U.S.C. § 3621(e)(2)(B). The final determination

as to Petitioner's eligibility for sentence reduction has not been made, and as such any claim that the

BOP abused its discretion in ruling on Petitioner's eligibility for early release is premature**.**

### Due Process

Currently Petitioner is enrolled in the RDAP. No determination has been finally made as to

whether he is entitled to early release upon completion of the program because Petitioner has not

completed the program. Accordingly, his claim is premature.

To the extent Petitioner raises a due process claim regarding the determination of his

eligibility for participation in RDAP, his claim fails. By virtue of a valid criminal conviction and his

subsequent legal confinement, a prisoner loses his expectation of liberty. *See Meachum v. Fano*,

427 U.S. 215, 224 (1976). In order to invoke pre-deprivation procedural due process protections,

a prisoner must first establish that he has been subjected to "atypical and significant hardship . . .
in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U. S. 472, 484 (1995).
The Constitution itself does not create a protected liberty interest in the expectation of early release.
*See Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U. S. 1, 7 (1979); *see
also Jago v. Van Curen*, 454 U.S. 14, 18 (1981) (mutually explicit understanding that inmate would
be paroled does not create liberty interest).  There is no protected liberty interest in the discretionary
early release for completing the RDAP program pursuant to 18 U.S.C. § 3621(c).  *See e.g. Cook v.
Wiley*, 208 F.3d 1314, 1322-23 (11th Cir. 2000); *Venegas v. Henman*, 126 F.3d 760, 765 (5th Cir.
1997); *Jacks v. Crabtree*, 114 F.3d 983, 986, n. 4 (9th Cir. 1997); *Fonner v. Thompson*, 955 F. Supp.
638, 642 (N.D. W.Va. 1997).

### *Ex Post Facto* Claim

To the extent Petitioner claims that the program statement violates the *ex post facto* clause,
his claim also fails.  Petitioner will not be imprisoned beyond the term imposed by the sentencing
court.  *See  Weaver v. Graham*, 450 U.S. 24, 30 (1981) (stating that an *ex post facto* violation occurs
when the legislature "increases punishment beyond what was prescribed when the crime was
consummated.").  The BOP has neither altered the definition of Petitioner's criminal conduct nor
increased the punishment for his crimes.

Moreover, Petitioner's argument lacks merit in that the challenged BOP policy is an
interpretive rule. The *Ex Post Facto* Clause  provides that:  "no *ex post facto* law shall be passed."
U.S. Const., Art. I, §9.  "As the text of the Clause makes clear, the *ex post facto* clause applies only
to 'laws.'" *See United States v. Ellen*, 961 F.2d 462, 465 (4th Cir. 1992).  Although not all actions
of an administrative agency, are exempt from *ex post facto* scrutiny, "when an agency promulgates

an interpretive rule, the *Ex Post Facto* Clause is inapplicable." *Id.*; *see also Woodley v. DOC*, 74 F. Supp. 2d 623, 631 (E.D. Va. 1999). Interpretive rules are "statements of enforcement policy" which, in contrast to legislative rules, do not have the force of law. *See id.* (quoting *Prater v. U.S Parole Comm'n*, 802 F.2d 948, 954 (7th Cir. 1986)).  As the Fourth Circuit explained in *Ellen*,  the *Ex Post Facto* Clause is applied to legislative rules because Congress "should not be allowed to do indirectly what it is forbidden to do directly."  *Ellen*, 961 F.2d at 465 (quoting *Prater*, 802 F.2d at 954). Legislative rules have the force of law.  Interpretive rules, however,  "are statements of enforcement policy. They are ... 'merely guides, and not laws: guides may be discarded where circumstances require; laws may not.'"  *Id.* (quoting *Prater*, 802 F.2d at 954) (quoting *Inglese v. United States Parole Comm'n*, 768 F.2d 932, 936 (7th Cir. 1985)).  Pursuant to the authority delegated to it by the Attorney General, *see Wilson*, 503 U.S. 334-35, the BOP issues policy guidelines to implement its mandate.  Program Statement 5132.04 "Categorization of Offenses" contains  rules and guidance BOP staff must use to determine eligibility for BOP programs, and nothing more.

A separate Order shall be entered in accordance with this Memorandum Opinion.

Date:   October 31, 2007          /s/_____
                                          RICHARD D. BENNETT
                                          UNITED STATES DISTRICT JUDGE